UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMY COHEN, et al.,<br>    PLAINTIFFS,<br><br>    v.<br><br>BROWN UNIVERSITY, CHRISTINA PAXSON, as successor to VARTAN GREGORIAN, and JACK HAYES, as successor to DAVID ROACH<br>    DEFENDANTS | EXPEDITED RELIEF REQUESTED<br><br><br>Case Number: 92-CV-0197 |

**PLAINTIFFS' MOTION TO ENFORCE JUDGMENT, TO ADJUDGE IN CONTEMPT, AND FOR EMERGENCY RELIEF**

Plaintiffs, members of a certified class of women varsity athletes and potential athletes at Brown University, by their undersigned counsel, hereby move to enforce the Court's Judgment of October 15, 1998; adjudge Defendants in contempt of that Judgment; and for emergency relief, providing Plaintiffs with expedited discovery and prohibiting Defendants from eliminating any women's varsity intercollegiate athletics team until Defendants can prove that the elimination of the teams will not violate the Court's Judgment. In support of this motion, Plaintiffs state as follows:

1. On October 15, 1998, after notice to the class and hearing, the Court entered its Judgment in this case, approving and ordering the parties to comply with their Joint Agreement of June 23, 1998. (Judgment and Joint Agreement attached as Exhibit A).

2. The Joint Agreement constitutes the binding agreement of the parties on Brown's plan for compliance with Title IX of the Education Amendments, 20 U.S.C. §1681, as to its intercollegiate athletic program.

3. The Joint Agreement has been in operation since 1998. Every August, Brown has provided class counsel with reports of its program and participants for the academic year just

1

concluded. Over the past 20 years, Brown has failed to achieve compliance at the 3.5% level in 2000-2001 (3.7%), 2001-2202 (4.8%), 2004-2005 (4.4%) and 2009-2010 (5.6%). In those years, Brown notified Plaintiffs' class counsel of the noncompliance and took action to address and correct the issues leading to noncompliance.

4. Paragraph III.C.1. of the Joint Agreement provides, among other things, that, if Brown University eliminates any "intercollegiate athletic teams for women," then "the percentage of each gender participating in Brown's intercollegiate athletic program shall be within 2.25% of each gender's percentage in the undergraduate enrollment for the same academic year."[1]

5. On May 28, 2020, Defendants announced that, effective immediately for the 2020-21 academic year, Brown University was:

    a. eliminating five women's intercollegiate athletic varsity teams -- women's equestrian, fencing, golf, skiing, and squash;

    b. eliminating six men's intercollegiate athletic varsity teams -- men's fencing, golf, squash, indoor and outdoor track, field, and cross country; and

    c. adding an intercollegiate varsity sailing program

6. Counsel for Brown also telephoned class counsel Labinger on this day and notified class counsel of these changes. Counsel for Brown did not reach out to class counsel prior to announcing its plans publicly or make any attempt to come to an agreement regarding the elimination of these women's teams.

---

[1] Paragraph III.A.1. of the Joint Agreement provides, among other things, that, if Brown does not eliminate any women's intercollegiate athletic team, then the percentage of each gender participating in its intercollegiate athletic program shall be within 3.50% of each gender's percentage enrollment for the same academic year. Until now, Brown has not tried to eliminate any women's intercollegiate athletic team since the Court approved the Joint Agreement and entered Judgment.

7. On June 6, 2020, Defendant Paxson publicly stated that the elimination of men's indoor and outdoor track and field and cross country was necessary for Brown to comply with the settlement agreement in the above-captioned matter. "Since the announcement of the athletics initiative, there have been requests to restore men's track, field and cross-country; however if these sports were restored at their current levels and no other changes were made, Brown would not be in compliance with our legal obligations under the settlement agreement."
(Available at https://www.brown.edu/about/administration/president/statements/addressing-brown-varsity-sports-decisions, accessed 6/23/20).

8. On June 9, 2020, President Paxson announced that Brown University was restoring men's track, field and cross-country, and no other changes were made. In a letter to the Brown Community, she wrote, "The reinstatement is effective immediately and does not alter other decisions to reduce the number of varsity sports as part of the initiative." (Available at https://www.brown.edu/news/2020-06-09/track, accessed 6/23/20).

9. Defendants' decision to eliminate five women's intercollegiate athletic varsity teams, and with them meaningful participation opportunities for women, constitutes a gross and willful violation of the Joint Agreement to the immediate and irreparable harm of the class.

10. On June 10, 2020, class counsel notified Defendants in writing that they were in gross violation of the Joint Agreement and commenced efforts to resolve the matter without Court intervention. (Attached as Exhibit G).

11. On June 10, 2020, Plaintiffs requested production of reports, resolutions, and analyses of the decision-making leading up to the determination to cut the five women's teams and that only by cutting men's track, field and cross-country would Brown comply with the Settlement Agreement. In its public postings, Brown had described a long and considered deliberative process,

comprised of proceedings and deliberations of consultants, a Presidential Committee on Excellence in Athletics, internal review within Athletics, and the Office of the President, culminating in review and approval by the Board of Trustees. A copy of the request is appended as Exhibit G.

12. Brown declined to provide any of the requested materials. In a conference call of counsel on June 12, 2020, Brown's counsel also stated it did not yet have its analysis to show compliance at the 2.25% level.

13. On June 16, 2020, Defendants provided class counsel with projected participation numbers for teams for the 2020-21 year on which it based its claim that it would be in compliance. In that projection, Brown claimed that there would be 25 women on the women's varsity sailing team and the same 25 women on a coed varsity sailing team, along with 10 men. Brown did not provide any projection of the undergraduate enrollment of women at Brown for 2020-21, contending such numbers are unavailable. In making its projections, Brown used estimated team sizes based on its projections for 2020-21, but used the 2019-20 rate of 52.3% women undergraduates, claiming it had no additional information. The Joint Agreement, however, requires women's athletic participation rate for 2020-21 to be within 2.25% of women's undergraduate enrollment rate "for the same academic year." Moreover, President Paxson, in her letter of June 6, 2020, stated that undergraduate enrollment for women is "currently at about 53%."

14. On June 18, 2020, class counsel also asked Defendants to provide them with all data, reports, analyses, and other information leading up to and forming the basis for the decision to reinstate the men's track, field, and cross country teams and make no other changes. Defendants have refused to provide all such information. Counsel also requested Brown's June or preseason team rosters for the last three academic years and any written plans that exist for the creation of

the coed and/or women's sailing teams. Brown has not provided this information. Plaintiffs also asked Brown when, if at all, it would make the sailing coach and the administrative person(s) who knows the most about the varsity sailing teams available for interviews. Brown has not responded to those requests.

15. Defendants have provided class counsel with intercollegiate athletic participation numbers for 2019–20 and previously provided the participation numbers for 2018–19. These numbers demonstrate why President Paxson made her June 6 announcement that "Brown would not be in compliance with our legal obligations under the settlement agreement" if men's track, field, and cross country teams were reinstated and Brown made no other changes. Based on the numbers provided by Brown, if the five women's teams were eliminated along with the six men's teams originally included (including track, field, and cross country), then women's opportunities would be (depending on the year) 42.15% or 42.72% of the total eliminated—bringing women *closer* to equality in Brown's program. But with men's track, field, and cross country reinstated and no other changes made, women's opportunities will be (depending on the year) 66.83% or 69.35% of the total eliminated—bringing women *farther* from equality in Brown's program.

16. This chart shows the numbers:

| | Teams Eliminated | Number of participants 2019-20 | Number of participants 2018-19 |
|---|---|---|---|
| **Women's** | | | |
| | Equestrian | 23.5 | 21.5 |
| | Fencing | 12 | 13.5 |
| | Golf | 9 | 11 |
| | Skiing | 10 | 9 |
| | Squash | 14 | 14 |
| | | | |
| **Total** | | **68.5** | **69** |
| | | | |
| **Men's** | | | |
| | Fencing | 11 | 8.5 |
| | Golf | 8 | 8.5 |
| | Squash | 15 | 13.5 |
| (Reinstated) | | | |
| | Cross Country | 15 | 17 |
| | Track and Field | 45 | 45 |
| | | | |
| **Total Eliminated Originally** | | **94** | **92.5** |
| **Total Eliminated Now** | | **34** | **30.5** |
| | | | |
| **Total Women's % Originally** | | **42.15%** | **42.72%** |
| **Total Women's % Now** | | **66.83%** | **69.35%** |

17. As a result, based upon the participants Brown has provided for 2019–2020, if the five women's teams were eliminated along with the six men's teams originally included (including track, field, and cross country), the participation rates for men and women in Brown's 2020–21 intercollegiate athletic program would likely have been within 2.25% of their undergraduate enrollment rate for 2019–20. (We do not yet know the undergraduate enrollment rates for 2020-21.) But, with the men's track, field, and cross-country teams reinstated, the participation rates for men and women rates in Brown's 2020–21 intercollegiate athletic program will be 4.4% from their undergraduate enrollment rate for 2019–20:

6

| **2019-2020 Total Undergraduates** | |
|---|---|
| Men | 3249 |
| Women | 3561 |
| Percentage of Women | 52.29% |
| | |
| **Total Number of Athletes with All 11 Teams Eliminated** | |
| Men | 354 |
| Women | 380.5 |
| Percentage of Women | 51.80% |
| | |
| **Total Number of Athletes after 3 Men's Teams Reinstated** | |
| Men | 414 |
| Women | 380.5 |
| Percentage of Women | 47.89% |
| | |
| **Difference from Undergraduate Percentage Rates** | |
| With All 11 Teams Eliminated | 0.49% |
| After 3 Men's Teams Reinstated | 4.40% |

18. In response to these facts, Defendants now claim that their plan to add a varsity women's and coed sailing program will bring the participation rates in Brown's 2020-21 intercollegiate athletic program within the required 2.25% of the 2020-21 undergraduate enrollment rates. In support of this position, Defendants say that there will be 25 women on the women's team and the same 25 women on the coed team—and that, for purposes of measuring compliance, these 25 women should be counted twice.

19. No sailing program currently exists at the varsity level at Brown. Defendants cannot rely on estimated numbers of a non-existent varsity team to demonstrate compliance with the Joint Agreement or Title IX. If Defendants are permitted to demonstrate compliance based upon projections that do not come to fruition, then it will be too late to undo the harm to the student-athletes on the women's teams that Brown is trying to eliminate. Moreover, the Joint Agreement

7

expressly sets forth that all measurement is based on actual participants on varsity teams in existence on the first and last day of competition in the year concluded.

20. Class counsel have attempted to confer and work with Defendants to stop the harm that is resulting from Brown's decision to violate the Court's Judgment and the parties' Joint Agreement.

21. Defendants have declined to enter negotiations with Plaintiffs and confirmed their intention to move forward with the elimination of the five women's varsity teams.

22. As discussed in the accompanying memorandum, Plaintiff class members will suffer irreparable harm in the absence of interim relief. This Court has previously recognized the irreparable injury that athletes experience and the danger that women's teams at Brown will not survive elimination of varsity status. The Court has previously held that "club status" is not equivalent to "varsity status." The Court has previously found that elimination of varsity status adversely affects the athletes and the continued viability of the teams for the students and future class members in three major areas: recruitment, diminution of competitive level and access to varsity competition, and loss of coaching staff. In addition, athletes on club teams have no access to varsity facilities, which include the trainers, weight room, and medical support.

23. Upon information and belief, at least one of the women's teams' coaches, having been advised of impending termination by Defendants, has committed to employment at another academic institution.

24. The actions of the Defendants jeopardize the ability of current class members on these teams from participating in varsity athletics for the rest of their career at Brown, due to the short amount of time that an athlete can participate in varsity sports at the intercollegiate level.

25. Each of the affected women's teams presents genuine and viable opportunities to

participate in the Brown intercollegiate athletic program at the varsity level, which opportunities are being denied by Defendants' actions.

26. **Equestrian.** Women's Equestrian at Brown won the Regional Championship in 2017-18, in which twelve collegiate teams competed. The team finished as the top team in its region (of 12 schools) in 11 out of the past 20 seasons and has finished in the top five nationally five times. Brown's Equestrian team has made more appearances at the nationals than all of the other Ivy League teams combined.

   a. Hannah Woolley, a member of the team and of the Brown class of 2021, placed second in two events at the 2018 Ivy Championships and qualified for post-season competition in 2019. Maya Taylor, a member of the team and of the Brown class of 2022, was recognized as the Academic All-Ivy recipient for 2018-19 and 2019-20 and was slated to be co-captain of the team for the next two years.

   b. The team was standing in second place in the region when the 2019-20 season was terminated. There is no established club team for equestrian at Brown, and it is expected that the student "fees" or "dues" associated with a club equestrian team (there are none for a varsity) would pose a significant financial barrier for many to continue to participate even if offered.

27. **Fencing.** Women's Fencing at Brown had a team member who captured third place at the NCAA Northeast Regional in 2020 and qualified for the 2020 NCAA Championships, which were not held. The team has had four NCAA All-Americans since 2000.

   a. Casey Chan, a member of the team and of the Brown class of 2023, is a nationally ranked fencer, who qualified for the COVID-cancelled post-season competition, but will never have a chance to compete at that level if she stays at Brown.

  b. Anna Susini, a member of the team and of the Brown class of 2022, was slated to be captain of the team in 2020-21. In applying for colleges, she limited her selections only to those offering varsity-level fencing. In 2020, Susini collected "First Team Foil honors" at the Northeast Fencing Conference.

28. **Golf.** Women's Golf at Brown had just installed a new coach in 2019-20 and announced three new recruited freshmen on April 30, 2020. In the past eight years, the team has produced three Academic All-Ivy recipients, First and Second Team All-Ivy players, and won the Ivy League Championship in 2015.

  a. Winnie McCabe, a member of the team and of the Brown class of 2021, was twice recognized as an All-American by the Women's Golf Coaches Association. As a senior finishing her college career, this is her last opportunity to participate in her chosen varsity sport.

  b. Pinya Pipatjarasgit, a member of the team and of the Brown class of 2022, finished in fourth place at the Brown Bear Invitational in 2018. Outside of Brown, she qualified for the U.S. Golf Association Girls' Junior Championship in 2019. After learning of the elimination of her team, Pipatjarasgit investigated the possibility of a transfer, only to find that it was too late in the year to transfer to a comparable institution for the following year.

29. **Skiing.** Women's Skiing finished third in the United States in slalom at the 2020 USCSA National Championships and fourth at the USCSA Eastern Regionals. Women's Skiing consistently qualified for post-season competition, reporting in 2017 that it was their thirteenth year in a row of qualifying. That year, Brown finished in third place overall.

30.     **Squash.** Women's Squash competed at the CSA National Championship Kurtz Cup in February 2020 and is ranked twelfth in national standings (50 total teams). At that Championship, the Brown team was awarded the sportsmanship award, which is voted on by all of college squash.

   a.     Alexa Jacobs, a member of the team and of the Brown class of 2021, was slated to be co-captain of next year's team—her last opportunity to compete at the intercollegiate level. In May 2020, just days before the team was cut, women's squash honored Jacobs for the best record at the Howe Cup Team Nationals, as well as a CSA Scholar-Athlete, and announced two recruited athletes to the incoming freshman class.

31.     In this Motion, Plaintiffs seek immediate relief from Brown's decision to eliminate the five women's varsity teams. Plaintiffs seek expedited consideration of this motion, including re-assignment to a judge sitting in the District of Rhode Island, issuance of an order prohibiting implementation of the announced team eliminations, expedited discovery, and a prompt hearing on Plaintiffs' motion.

32.     Plaintiffs have filed a Memorandum of Fact and Law and supporting documents contemporaneously with this motion.

**WHEREFORE** Plaintiffs respectfully request that the Court enforce the Joint Agreement to ensure Defendants provide Plaintiffs with equal athletic opportunities at Brown pursuant to Title IX, the Joint Agreement, statutory authority, and relevant case law. Plaintiffs also request the Court enjoin Defendants from eliminating any women's intercollegiate athletic varsity teams unless and until they are able to prove that the elimination of these teams will not violate the Court's Judgement and the Joint Agreement. Plaintiffs further pray that the Court issue an Order to

Defendants to show cause why they should not be held in civil contempt of the Judgment of October 15, 1998, and schedule the matter for hearing thereon.

Respectfully Submitted,

 /s/ Lynette Labinger
Lynette Labinger #1645
128 Dorrance St., Box 710
(401) 465-9565
Providence, RI 02903
ll@labingerlaw.com

Cooperating counsel,
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF RHODE ISLAND and PUBLIC JUSTICE

Arthur H. Bryant
Bailey & Glasser, LLP
1999 Harrison Street
Suite 660
Oakland, CA 94612
510-507-9972
abryant@baileyglasser.com

Leslie Brueckner
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8205
lbrueckner@publicjustice.net

(To be admitted pro hac vice)
NEWKIRK ZWAGERMAN, P.L.C.
Jill Zwagerman, AT0000324
Lori Bullock AT0012240
521 E. Locust Street, Suite 300
Des Moines, IA 50309
Telephone: 515-883-2000
Fax: 515-883-2004
Email: jzwagerman@newkirklaw.com
Email: lbullock@newkirklaw.com

CERTIFICATION

I hereby certify that on June 29, 2020, a true copy of this document was delivered electronically using the CM/ECF system to all counsel of record and was further sent by email to the following counsel for defendants:

Robert C. Corrente (RCorrente@whelancorrente.com)
Eileen Goldgeier (eileen_goldgeier@brown.edu)
James Green (JMGreen@brown.edu)

                                                                    /s/ Lynette Labinger
                                                                   Lynette Labinger      #1645